459 So.2d 510 (1984)
STATE of Louisiana
v.
Lane C. NELSON.
No. 83-KA-0767.
Supreme Court of Louisiana.
October 15, 1984.
Rehearing Denied November 15, 1984.
Concurring Opinion November 19, 1984.
*512 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Louise Korns, Jo Ellen McMillen, Philip Boudousque, G. Michael Grosz and William C. Credo, Dorothy A. Pendergast, Asst. Dist. Attys., for plaintiff-appellee.
Matt Greenbaum, Law Offices of Matt Greenbaum, New Orleans, for defendant-appellant.
WATSON, Justice.
Defendant, Lane Christian Nelson, was convicted of committing a first degree murder on July 22, 1981, in violation of LSA-R.S. 14:30.[1] After a sentencing hearing, *513 the jury recommended death on the ground that Nelson was engaged in an armed robbery at the time of the murder, a statutory aggravating circumstance. LSA-C.Cr.P. art. 905.4(a).[2] Defendant has appealed his conviction and sentence.

FACTS
On July 23, 1981, at about 7:00 P.M., a traffic accident occurred on Interstate 10 in Madison County, Florida. Trooper Homer Melgaard investigated the accident, which involved a disabled truck hit in the rear by a Mercury automobile, despite the truck driver's efforts to flag traffic. Witnesses at the scene advised Trooper Melgaard that two men walking down the road had been in the Mercury. One of them, Lane C. Nelson, was arrested for operating a motor vehicle under the influence of alcoholic beverages and both he and his companion, Robert Wilhelm, were taken to the Madison County jail. Because Trooper Melgaard had to wait for a wrecker, the trio reached the jail between 8:30 and 8:45 P.M. Melgaard requested a breathalyzer test on Nelson which showed a .24 reading.[3] In the course of doing his paperwork on the accident report, Trooper Melgaard engaged Nelson in a general conversation and inquired about the ownership of the vehicle. Nelson said he had borrowed the rented automobile from a friend in Louisiana to go to the store, and Trooper Melgaard suspected that the car might be stolen. During the course of the conversation, Nelson volunteered: "Looking at me, you do not think I would kill anybody," (Tr. 245). At this point, Trooper Melgaard broke off the conversation and summoned Officer William Pheil, who gave Nelson his Miranda rights at approximately 10:00 P.M.[4] After those rights were fully explained and Nelson signed a waiver, the officers began questioning him about his startling statement.
Nelson had been hitchhiking to New Orleans when he was picked up by Beauvais Randall in Bunkie, Louisiana. Randall, apparently a transvestite, was dressed like a woman. After Nelson told Randall that he had no money, Randall offered to pay Nelson for a photography session at Randall's apartment in New Orleans. Following an early morning arrival at the Randall apartment, the two men took a nap, and Randall showed Nelson magazine illustrations of women in bondage positions which he wished duplicated. Randall was trussed in ropes and Nelson took Polaroid photographs. During a break, Nelson received twenty dollars from Randall and purchased cigarettes, a pint of vodka, and two six packs of beer. Before Nelson left for the store, he retied Randall who performed oral sex on Nelson. Subsequently, there were approximately three hours of photography with Randall dressed in a woman's black slip and high heels. Randall then assumed men's clothes and the two went to a pizza parlor where Nelson drank beer. After they returned to Randall's apartment, Randall asked Nelson to tie him up again before Nelson left to do some laundry. While doing the laundry, Nelson decided that he would leave in Randall's rented Mercury with Randall's money. When he announced his plan to Randall, the latter began to scream. Nelson stabbed Randall repeatedly with an eight inch knife which had been in Randall's suitcase, took sixty-five or seventy dollars from Randall's jeans, and drove off in the Mercury. He intended to drive to Florida but went west instead of east and spent the night at a rest stop about one hundred miles from New Orleans. Nelson then retraced his steps to New Orleans and continued on to Florida where he picked up hitchhiker Wilhelm. *514 Nelson told Wilhelm about what had happened to Randall because he "had to tell someone". (Appendix B, page 52)
According to Trooper Melgaard and Officer Pheil, Nelson did not appear to be too intoxicated to make a statement and spoke coherently. During the course of the statement, Pheil called special agent Robert Kinsey with the Florida Department of Law Enforcement. Kinsey repeated Nelson's Miranda rights to him at approximately 10:20 P.M. and Nelson signed another waiver. Kinsey and Pheil first talked to Wilhelm and then interviewed Nelson at approximately 10:30 P.M. Nelson gave directions to Randall's apartment, speaking directly to the Jefferson Parish authorities. Nelson's cooperation enabled the Jefferson Parish police to find Randall's body still tied in a locked bedroom. Nelson gave a taped confession to Officer Kinsey. A transcript of the confession, in which Nelson sounds completely sober, coherent, and candid, is attached as Appendix A.[5]
Nelson also consented to a search of the Mercury automobile, but the search was not completed until the following day. In the automobile were some aluminum cans, a short piece of white nylon rope, and one photograph showing a white male tied up in bed wearing a woman's slip. Although there were numerous knife wounds, Randall's death resulted from two stabs which severed his common carotid artery.
Subsequently, on July 27, 1981, when Detective DeNoux of the Jefferson Parish Sheriff's office arrived in Madison, Florida, to transport defendant back to Louisiana, Nelson was again advised of his Miranda rights and gave a second taped statement, a transcript of which is attached as Appendix B. Both recordings were heard by the jury.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the trial court erred in failing to suppress his original oral inculpatory statement to Trooper Homer Melgaard because he had not been warned of his Miranda rights and he was too intoxicated to make a knowing and intelligent waiver of those rights before his confession.
Trooper Melgaard erred in not advising Nelson of his constitutional rights. Berkemer v. McCarty, ___ U.S. ___, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). However, the error was inadvertent; there is no indication of any official misconduct or bad faith. See State v. Kent, 391 So.2d 429 (La.1980). Miranda states that "where in-custody interrogation is involved, there is no room for the contention that the privilege is waived if the individual answers some questions or gives some information on his own prior to invoking his right to remain silent when interrogated." Miranda v. Arizona, supra, 384 U.S. at 475-476, 86 S.Ct. at 1628, 16 L.Ed.2d at 724.
Despite being in custody, Nelson was not being interrogated at the time of his statement, certainly not about anything even remotely connected with murder. His arrest was entirely legal. Compare Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Nelson's unsolicited incriminating statement was unresponsive to the car ownership about which he was being questioned. At most, Nelson was suspected of possible car theft. Trooper Melgaard was unaware that a murder had been committed and could not have known that his conversation might elicit the incriminating response. See Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) and State v. Castillo, 389 So.2d 1307 (La.,1980). As to the crime of murder, Nelson's outburst was as voluntary as if he had walked into the police station and announced his guilt. Miranda, supra. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.... Volunteered statements of any kind *515 are not barred by the Fifth Amendment...." Miranda, supra, 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.
Nelson had already confessed his guilt to Wilhelm. Wilhelm, a disinterested hitchhiker, was also in custody and may have been driving the Mercury. (Appendix B, page 52). At some point, Wilhelm would have undoubtedly incriminated Nelson, who was in the car rented by Randall and had left his finger prints throughout Randall's apartment. Therefore, despite Melgaard's error in not advising Nelson of his Miranda rights, the police would inevitably have discovered Nelson's involvement with Randall's murder. "[W]hen, as here, the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible." Nix v. Williams, ___ U.S. ___ at ___, 104 S.Ct. 2501 at 2511, 81 L.Ed.2d 377 at 390 (1984).[6]
The state carried its burden of proof as to the admissibility of Nelson's oral inculpatory statement. LSA-R.S. 15:451.
Despite Nelson's blood alcohol level, the evidence is that he was competent to waive his constitutional rights. On the basis of the testimony of the Florida police officers and the clarity of the first taped confession, the trial court and the jury concluded that Nelson was not too intoxicated to make a voluntary statement. Nelson apparently had a great tolerance for alcohol; his taped statement itself fully supports the conclusion that Nelson was sober enough to make a knowing and intelligent waiver of his constitutional rights prior to his confession. See State v. Delore, 381 So.2d 455 (La., 1980).
This assignment lacks merit.

ASSIGNMENTS OF ERROR NUMBER TWO AND THREE
Defendant contends that his two taped statements were inadmissible because they were fruits of his illegal interrogation by Trooper Melgaard. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
As to the second statement, on July 27, 1981, the connection between Nelson's incriminating remark on July 24 and the statement was so attenuated that any taint had been dissipated. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); State v. Harper, 430 So.2d 627 (La., 1983). In any event, the poisonous tree doctrine is inapplicable; there was no primary taint because Nelson's initial statement was not the product of interrogation.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant contends that the trial court erred in allowing the state to exercise a peremptory challenge on juror Sampey after she had been sworn in violation of LSA-C.Cr.P. art. 795.[7]
The court allowed the objection because juror Sampey had failed to inform the court during voir dire that her son was under indictment for theft when asked if any member of her family had been arrested or convicted. Defendant had not used all of his peremptory challenges when the state was allowed to excuse juror Sampey and the state's peremptory challenges were not exhausted. There was no prejudice to the defendant and no error in the trial court excusing the juror from service. LSA-C. Cr.P. art. 921;[8]State v. Cormier, 272 *516 So.2d 686 (La., 1973); State v. Thornhill, 188 La. 762, 178 So. 343 (1937).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FIVE
Defendant contends that the trial court erred in allowing gruesome photographs of the homicide to be displayed to the jury after the defense had stipulated that the body was that of Beauvais Randall. Since there was no issue about the identity of the victim or the murderer, it is argued that the probative value of the photographs was outweighed by their prejudicial effect.
Some of the postmortem photographs of the victim are extremely unpleasant, but they were admissible to corroborate the details of Nelson's confessions and the medical evidence about the cause of death. They depict the helplessness of the victim at the time of the stabbing; see assignment of error number six, infra. The probative value of the photographs is not outweighed by their prejudicial effect. State v. Watson, 449 So.2d 1321 (La., 1984); State v. Brogdon, 426 So.2d 158 (La., 1983); State v. Parker, 425 So.2d 683 (La., 1982); State v. Lindsey, 404 So.2d 466 (La., 1981); State v. Bodley, 394 So.2d 584 (La., 1981); and State v. Rideau, 249 La. 1111, 193 So.2d 264 (1966).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER SIX
Abandoned in brief, defendant contends in this assignment that the trial court erred in prohibiting cross-examination of police officers about the victim's violent nature.
Since it is clear from the photographs that the victim was unable to make any hostile demonstration or overt act toward Nelson at the time he was killed, evidence of his violent nature was inadmissible. State v. Faulkner, 441 So.2d 721 (La., 1983); LSA-R.S. 15:482.[9]
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER SEVEN
Defendant contends that the trial court refused to allow the cornerstone of his defense, to-wit: evidence from two members of the sanity commission about Nelson's mental capacity on the day of the murder to have the requisite specific intent.
Nelson pleaded not guilty by reason of insanity, as well as not guilty. Therefore, testimony about any insanity or mental defect at the time of the offense was admissible evidence. LSA-C.Cr.P. art. 651.[10] Compare State v. Lecompte, 371 So.2d 239 (La., 1979). Under LSA-R.S. 14:14,[11] the Louisiana codification of the M'Naughten rule, an offender is only exempt from criminal responsibility if incapable of distinguishing between right and wrong with reference to the offense. Evidence of a mental defect which does not meet the M'Naughten definition of insanity cannot negate a specific intent to commit a crime. State v. Rideau, supra.
Defense counsel focused his inquiry on whether defendant on the day of the murder had the mental capacity to form the requisite specific intent to murder. The *517 trial court disallowed questions designed to elicit expert opinion about defendant's ability to have a specific intent to murder on the day of the crime. The court agreed that the experts could be asked hypothetical questions based on the facts in evidence about Nelson and specific questions about his mental capacity at the time of the offense. Defense counsel refused to accept the court's parameters for his questioning.
Due process requires the prosecution to bear the burden of persuasion with respect to each element of a crime. Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Thus, the state has the burden of proving that an offender had specific intent. However, defendant attempted to negate his specific intent to commit the crime by showing a mental defect which did not meet the M'Naughten definition, and Louisiana does not allow evasion of the M'Naughten rule in this fashion. State v. Rideau, supra. State v. Lecompte, supra; State v. Murray, 375 So.2d 80 (La., 1979).
Since defense counsel refused to phrase his questions to the expert psychiatrists in the context of Louisiana law, the trial court correctly rejected the questions as improper.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER EIGHT
In this assignment, abandoned in brief, defendant contends that the trial court erred by not allowing both defense attorneys to address the jury in closing argument.
Conduct of judicial proceedings is within the discretion of the trial court. LSA-C.Cr.P. art. 17;[12]State v. Chaisson, 425 So.2d 745 (La., 1983). There is no allegation or showing that defendant suffered any prejudice. LSA-C.Cr.P. art. 921, supra.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER NINE
Defendant contends that a mistrial should have been granted when the prosecutor made an inflammatory attack on defense counsel during his rebuttal argument.
The prosecutor stated that defense counsel's "function in life, or with this defendant, is to make inside look out, black look white, up seem downconfuse and befuddle the issue, whatever you want to do." (Tr. 1093). After an objection, the trial court instructed the jury to disregard the remark and the prosecutor apologized. Any influence from the improper remarks was cured by the precautionary instruction. Mistrial is only warranted when there has been substantial prejudice to the defendant. State v. Jarman, 445 So.2d 1184 (La.,1984).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TEN
Defendant contends that it is unconstitutional to require him to bear the burden of proof on the defense of insanity as required by LSA-C.Cr.P. art. 652.[13]
This assignment lacks merit. State v. Felde, 422 So.2d 370 (La.,1982); State v. Thompson, 429 So.2d 862 (La.,1983); Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

*518 ASSIGNMENT OF ERROR NUMBER ELEVEN
Defendant objects to the prosecutor's arguing to the jurors at the sentencing phase of trial that "your recommendation will be reviewed and perhaps rereviewed by this court." (Tr. 1164)
The trial court sustained an objection and instructed the jury that "this is going to be your determinationthat's why you're herea binding recommendation to the court; not just a recommendation. It is binding.... It will not be reviewed by this court and I want you to disregard any comment about any possible review by any court." (Tr. 1167-1168).
Any remark by the prosecutor which lessens the jury's sense of responsibility is prejudicial. However, the judge's instruction clarified the jury's role. During his general charge, the trial court again told the jury:
"[Y]ou, the jury, and, you, alone, in this case, are given the authority to make a binding recommendation to the trial judge, which is me, as to the sentence that should be imposed on the defendant." (Tr. 1169)
In view of the court's curative instructions, there was no prejudice to the defendant. See State v. Knighton, 436 So.2d 1141 (La.,1983); State v. Moore, 414 So.2d 340 (La.,1982); State v. Mattheson, 407 So.2d 1150 (La.,1981). Compare State v. Willie, 410 So.2d 1019 (La.,1982).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWELVE
Defendant contends that the state introduced insufficient evidence of armed robbery, arguing that there was no force, intimidation or taking of anything of value. LSA-R.S. 14:64 A.[14]
Apart from the automobile, Nelson took Randall's money which constitutes something of value under the statute.
Defendant relies on the fact that the victim was tied at his own request to argue that no force or intimidation was necessary to accomplish the robbery. However, Randall was killed solely to prevent him from screaming his objections to Nelson's departure with his car and money. He was stabbed, i.e., force was applied, to accomplish the robbery. The murder facilitated the robbery. It unquestionably occurred while defendant was engaged in armed robbery. Nelson said that if Randall had been gagged and unable to scream, he would not have had to kill him. (Appendix A, page 27).
This assignment lacks merit.

ASSIGNMENTS OF ERROR NUMBER THIRTEEN AND FOURTEEN
These assignments contend that the death sentence is disproportionate to the penalty imposed in similar cases and will be considered in connection with the proportionality review of the death sentence.
DEATH SENTENCE REVIEW
Under LSA-C.Cr.P. art. 905.9.1, every sentence of death is reviewed for excessiveness on the basis of three factors:
"(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
"(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
"(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."
A. There is no indication that the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors. Randall and Nelson, both white males, were, respectively twenty-five and twenty-six years old at the time of the crime. Voir dire questions were used to exclude prospective jurors who would be *519 influenced by the homosexual aspects of the murder.
B. The fact that the murder was performed during the course of an armed robbery, a serious felony, is an adequate statutory aggravating circumstance and the evidence supports the jury's conclusion that the murder occurred during the course of an armed robbery.
C. SENTENCE REVIEW:
Proportionality of the sentence
Although not constitutionally mandated by the United States Supreme Court under Pulley v. Harris, ___ U.S. ___, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), a proportionality review is part of the Louisiana statutory scheme for imposition of the death penalty. LSA-C.Cr.P. art. 905.9.1(c), supra.
The only similar case from Jefferson Parish is State v. Taylor, 422 So.2d 109 (La.,1982). All of the other capital cases can be distinguished by on the facts of the crime or some mitigating factor with reference to the defendant. Taylor also involved a murder committed with multiple stab wounds during the course of an armed robbery. While the Taylor jury also found that the offense was committed in an especially heinous, atrocious, or cruel manner and the jury did not make that finding here, Randall received eighteen stabbing wounds. Since both crimes were brutal and senseless, the death sentence imposed on Nelson is not disproportionate to Taylor's death sentence.
Nelson was depressed over the impending death of his mother from throat cancer. He had a history of heavy drinking and drug abuse, and both his parents were alcoholics. He was allegedly intoxicated at the time of the crime. The jury did not find that these mitigating factors justified a lesser sentence, and they do not render the penalty imposed disproportionate.
For the foregoing reasons, the conviction and sentence of defendant, Lane Christopher Nelson, are affirmed.
AFFIRMED.
CALOGERO, J., concurs, disagreeing only with the treatment of the Miranda issue.
MARCUS, J., concurs and assigns reasons.
DENNIS, J., concurs in the result, disagreeing with treatment of the Miranda issue and the statement of federal and state law regarding proportionality review. See State v. Brogdon, 457 So.2d 616; State v. Welcome, 458 So.2d 1235 (dissenting opinion).
LEMMON, J., concurs and assigns reasons.
DIXON, C.J., concurs, disagreeing with the treatment of Assignment # 7.
MARCUS, Justice (concurring).
Agreeing with the majority that Nelson's initial statement was not the product of interrogation, I do not consider that Miranda warnings were necessary. Accordingly, I cannot agree that Trooper Melgaard erred in not advising Nelson of his Miranda rights.
LEMMON, Justice, concurring.
The trial court may have erred in admitting the evidence of defendant's initial statement to the investigating policeman ("looking at me, you do not think I would kill anybody"). The defendant was in custody, and the officer during the interrogation suspected that the vehicle may have been (as, in fact, it was) stolen. Thus, the officer probably should have known that his words or actions were reasonably likely to elicit an incriminating response (at least as to the car theft) and should have provided the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The fact that the incriminating response did not relate to the offense of theft of an automobile (but did relate indirectly to the circumstances surrounding the taking of the vehicle) is probably *520 of no moment under Miranda. The Miranda prophylactic rule generally excludes voluntary statements made by unwarned suspects during custodial interrogation.[1] See New York v. Quarles, ___ U.S. ___, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984).
However, a decision that the initial statement should have been excluded because of violation of the prophylactic rule does not conclude the inquiry. The officers immediately warned defendant of his rights before any further statements were made. The record clearly supports the "knowing and intelligent" nature of defendant's waiver of his Miranda rights and the voluntariness of the subsequent statements.[2] Thus, the subsequent inculpatory statements were not compelled by police conduct which overcame defendant's will to resist. See Beckwith v. United States, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). Furthermore, the subsequent statements were clearly "attenuated" from and not the "product" of defendant's earlier statement. See United States v. Ceccolini, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978).
Furthermore, the "holding" of Miranda does not require suppression of derivative evidence (here, voluntary statements from a properly warned suspect) merely because there can be established a causal connection between such evidence and a voluntary statement obtained in violation of Miranda. See Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974); New York v. Quarles, ___ U.S. ___, 104 S.Ct. 2626, 81 L.Ed.2d 550, above, (O'Connor, J., concurring in part, dissenting in part). Compare Oregon v. Elsted, 61 Or.App. 673, 658 P.2d 552 (1983), cert. granted, ___ U.S. ___, 104 S.Ct. 1437, 79 L.Ed.2d 759, 36 Cr.L. 4020 (1984).
The initial statement was only marginally incriminating when compared to the subsequent statement. Since the subsequent statements were admissible, and since the initial statement was clearly voluntary, any error in admitting the initial statement was harmless beyond a reasonable doubt. La. C.Cr.P. Art. 921; State v. Gibson, 391 So.2d 421 (La.1980).
NOTES
[1] LSA-R.S. 14:30 provides in pertinent part:

"First degree murder is the killing of a human being: "(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery;
"Whoever commits the crime of first degree murder shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence in accordance with the recommendation of the jury."
[2] LSA-C.Cr.P. art. 905.4(a) provides:

"The following shall be considered aggravating circumstances:
"(a) The offender was engaged in the perpetration or attempted perpetration of aggravated rape, aggravated kidnapping, aggravated burglary, aggravated arson, aggravated escape, armed robbery, or simple robbery; ..."
[3] In Florida, as in Louisiana, there is a presumption of intoxication with a reading of .10.
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[5] Appendices A and B were transcribed at this court to facilitate review of Nelson's appeal. They are attached to and comprise a part of the opinion, but are designated "Not for Publication".
[6] The issue of harmless error was pretermitted in Berkemer v. McCarty, supra.
[7] LSA-C.Cr.P. art. 795 provides:

"A juror cannot be challenged for cause by the state or the defendant after having been accepted by the challenging party, unless the ground for the challenge was not known by the challenging party prior to acceptance. A challenge for cause must be made before the indictment is read to the jury.
"A peremptory challenge may be made by the state at any time before the juror is accepted by it, and by the defendant at any time before the juror is sworn."
[8] LSA-C.Cr.P. art. 921 provides:

"A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused."
[9] LSA-R.S. 15:482 provides:

"In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible."
[10] LSA-C.Cr.P. art. 651 provides:

"When a defendant is tried upon a plea of `not guilty', evidence of insanity or mental defect at the time of the offense shall not be admissible.
"The defenses available under a combined plea of `not guilty and not guilty by reason of insanity' shall be tried together."
[11] LSA-R.S. 14:14 provides:

"If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility."
[12] LSA-C.Cr.P. art. 17 provides:

"A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction. It has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done. A court has the power to punish for contempt."
[13] LSA-C.Cr.P. art. 652 provides:

"The defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence."
[14] LSA-R.S. 14:64 A. provides:

"Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."
[1] It is not clear that defendant was being questioned at the time of the statement. If the questioning had been completed and defendant made a voluntary outburst completely unrelated to the scope of the completed interrogation, the statement would have been admissible.
[2] Defendant had already told his companion of the murder and obviously wanted to tell the officers. Thus, the subsequent statements were clearly the product of defendant's own free will; that is, of his own manifest desire to reveal to the police the details of the murder.