CIACCIO, Judge.
Defendant, Dwayne E. Bickham, was charged by grand jury indictment with first degree murder. R.S. 14:30. He was found guilty as charged and sentenced to serve life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. Defendant appeals his conviction and sentence relying upon one assignment of error. We affirm.
The account of the events immediately preceeding this crime are in conflict.
Officer Lawrence Robert of the New Orleans Police Department responded to a burglar alarm at 900 North Carrollton Avenue, New Orleans, on the morning of May 21, 1983 at approximately 4:21 a.m. As he approached this location he observed the defendant running from the Handy Stop Food Store, located directly across the street, at 856 North Carrollton Avenue. The defendant fired two shots from his revolver at Officer Robert. The policeman then chased after the defendant, on foot, as the subject ran river bound on North Car-rollton Avenue towards the intersection of Orleans Avenue. The defendant attempted to again fire his weapon at the pursuing policeman but the gun misfired. The chase continued as the subject ran down Orleans *424 Avenue for approximately a block at the end of which time he gave up, dropped his gun and raised his hands in the air. Officer Robert summoned the assistance of other police officers. He thereafter placed the defendant in the back of the police car and returned to the grocery store. Upon entering the store he found the body of Gerald Cruice behind the customer counter, on the floor, with gunshot wounds to the chest and head. Robert thereafter called for the assistance of the emergency units and the homicide unit.
Officer Marlon Defillo had been on routine patrol on the morning of this incident. He had heard Officer Roberts call for assistance and responded to the call. When he arrived at the Handy Stop Food Store he entered and found the victim, in the deserted store, lying on the floor near the register bleeding from the head and chest.
While the defendant waited in the back of the police car, outside the crime scene, he was advised of his rights by Officer Melvin Winnis and then the defendant was asked if he desired to make a statement. He responded affirmatively and was thereafter taken to police headquarters where he confessed to the murder.
Officer Lionel Adams of the Homicide Unit of the New Orleans Police Department arrived at the murder scene in order to conduct an investigation. He made a written report of the incident and ordered that photographs be taken and evidence be secured by the Crime Lab.
Ricardo Gillette of the Crime Lab retrieved the defendant’s weapon, a .38 caliber special revolver, from the neutral ground on Orleans Avenue. The gun had been fired five times. Two pellets were recovered from the victim’s body and these pellets were turned over to the Ballistics Unit. At a later date, a third pellet was recovered from the structure of a house at 925 N. Carrollton. A bottle of beer and change in the amount of $2.14 were found on the customer counter at the store.
Officer Otto Stubbs, an expert in firearm identification attested to the fact that the bullets recovered from the crime scene and from the nearby structure of a house were in fact the bullets fired from the defendant’s gun.
Dr. Paul McGary conducted the autopsy on the victim. He observed three gunshot wounds. He found that one of the shots, namely the chest wound, was inflicted at close range. The two wounds to the head were at a longer range and occurred when the body was immobile, as could be detected from the parallel nature of the wounds.
The defendant testified at his trial. He stated that on the date of this incident he left his home near Dumaine Street and proceeded down Dumaine towards Carroll-ton Avenue where he intended to catch a bus in order to go to work at Riverfleet, a company located at Carrollton Avenue and the river. He was carrying a gun at the time in order to provide for his own protection as he had been involved in a confrontation with an individual shortly before this time and that person had fired a gunshot at him.
Defendant decided to stop in the food store for a beer before catching the bus for work. According to the defendant, he entered the store and obtained a beer from the cooler. He did not see the store owner so he shouted for him. The owner came from the back of the store and engaged in an argument with the defendant. According to Bickham, he thought the store owner was reaching for a weapon from under the counter so he shot the victim three times and ran from the store. As he ran the door hit his hand and the gun again fired in the vicinity of the police officer who was located outside the store.
The defendant denied that he was advised of his constitutional rights. He asserted that he desired the assistance of counsel but this was not provided. According to Bickham, he was threatened and beaten into signing the confession.
Three policemen and a ranking police officer who were present at the time of the defendant’s confession specifically denied the fact that Bickham was in any way threatened or physically assaulted.
*425 In his sole assignment of error the defendant requests that we review his record for errors patent. La.C.Cr.P. Art. 920(2). We have reviewed the record and find no such errors. This assignment of error lacks merit.
We have also reviewed this case in order to determine whether, when viewing the facts in the light most favorable to the prosecution any rational trier of fact could find the defendant guilty beyond a reasonable doubt of first degree murder. R.S. 14:30.
First degree murder is defined as follows:
Sec. 30. First degree murder.
First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery;
# * * * * sjc
In such cases, intent can be inferred from the circumstances of the transaction. State v. Noble, 425 So.2d 734 (La.,1983). Specific intent can be inferred when the wound is inflicted at close range. State v. Boyer, 406 So.2d 143 (La.,1981).
In this ease the State established that Gerald Cruice was killed from a gun shot inflicted at close range, by the defendant upon his victim. From this the jury could infer the defendant’s specific intent to kill his victim.
Additionally, the State proved by means of the defendant’s freely given statement, that he entered the store with the intent to commit robbery.
Viewing the facts in the light most favorable to the prosecution, a rational trier of fact could have found the defendant guilty of first degree murder beyond a reasonable doubt. Accordingly, there is sufficient evidence to support the defendant’s conviction of first degree murder. State v. Nelson, 459 So.2d 510 (La.1984), writ denied, — U.S. -, 105 S.Ct. 2050, 85 L.Ed.2d 322 (1985); State v. Edwards, 419 So.2d 881 (La.1982).
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.