626 So.2d 395 (1993)
STATE of Louisiana
v.
Dwana A. KNAPPER and Corneal Knapper.
No. 93-K-1556.
Court of Appeal of Louisiana, Fourth Circuit.
October 14, 1993.
Writ Denied January 28, 1994.
Harry F. Connick, Dist. Atty., Ann Evans Whittington, Asst. Dist. Atty., Raymond R. Egan, III, New Orleans, for plaintiff/relator.
Frank Larré, New Orleans, for defendant/respondent.
Before LOBRANO, WARD and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Respondents, Dwana and Corneal Knapper, were charged by bill of information with possession of cocaine with intent to distribute, a violation of La.R.S. 40:967. On July 23, 1993, the trial court granted respondents' motion to suppress evidence seized from their residence. Relator, the State of Louisiana, now seeks supervisory writs from this court.
*396 Officer James Kelly testified that on May 19, 1993, the day before respondents' arrests, he received information from a confidential informant ("CI") that respondent Corneal Knapper was selling illegal narcotics. The CI advised Officer Kelly that Corneal Knapper could be reached by calling his radio beeper. Knapper would return the call and arrange to deliver the narcotics to the purchaser. The CI further informed the officer that Knapper would usually be driving a white Chevrolet Blazer vehicle. The CI also gave Officer Kelly the address where Corneal Knapper lived with his wife, Dwana, 2226 St. Bernard Avenue.
That same day Officer Kelly and his partner, Officer Roland Matthews, set up a surveillance of the Knapper residence in an unmarked police unit. They observed Corneal Knapper exit his residence and enter the white Chevrolet Blazer described by the CI. The officers followed Knapper to the corner of St. Bernard Avenue and N. Villere Street where they observed "what we believed to be a narcotics transaction." Knapper then drove back to his residence. The officers ended their surveillance later that evening.
The next day, May 20, 1993, the officers picked up their surveillance of the Knapper residence. After waiting for a while, Corneal Knapper exited the residence, entered the white Blazer and drove to the corner of St. Bernard Avenue and N. Miro Street, where the officers again observed him conduct what they believed to be a narcotics transaction. At that point, the officers decided to "make a traffic stop." When the officers turned on their blue flashing dashboard light and siren, Knapper fled. He got on Interstate 10 heading west. As they pursued Knapper he was observed tossing objects out of the window of the vehicle.
The officers finally caught up with Knapper when he exited the interstate and got stuck in traffic on S. Claiborne Avenue near Martin Luther King Boulevard. The officers took Corneal Knapper into custody and then returned to the Knapper residence with the intention of securing a search warrant based on what they had observed. There is no evidence that the officers recovered any contraband in Knapper's vehicle or any contraband that he may have discarded during the chase.
At the Knapper residence Officer Kelly knocked on the front door but received no answer. He then unlocked an iron burglar gate with keys he had taken from Corneal Knapper. At that point Dwana Knapper opened the front door and identified herself as Corneal Knapper's wife. Officer Kelly advised her of what had occurred and asked that they be allowed to secure the residence until a search warrant could be obtained. She refused and walked back into the residence without closing the front door.
Through the open door and iron gate Officer Kelly observed Dwana Knapper walk to what he believed was a bedroom where she retrieved a brown bag from underneath the bed. He saw her leave the bedroom and walk into a foyer. Officer Kelly testified that he believed she was attempting to dispose of narcotics. He opened the iron gate, went into the area into which Dwana Knapper had disappeared and saw her pouring a white substance from a plastic bag into a toilet. Officer Kelly recovered the plastic bag. The white substance was later determined to be cocaine. The officers subsequently secured a search warrant and conducted a search of the residence, confiscating $3,526.00 in cash, two handguns and assorted pieces of jewelry, in addition to the cocaine already recovered.
Based on this evidence, the trial court granted respondents' motion to suppress the evidence seized from the residence.
In Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the United States Supreme Court adopted the "inevitable discovery" doctrine, holding that evidence found as a result of a violation of a defendant's constitutional rights, would be admissible "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered." The so-called "inevitable discovery doctrine" has been followed by Louisiana courts. State v. Nelson, 459 So.2d 510 (La.1984), cert. den., Nelson v. Louisiana, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 322 (1985); State v. Clark, 499 So.2d 332 (La.App. 4th Cir.1986).
In the instant case, the search warrant issued after the recovery of the cocaine was *397 issued on an affidavit reciting, among other things, that the cocaine had been recovered from the residence. In our inevitable discovery analysis we must consider whether the facts and circumstances known to the officers before the seizure of the cocaine would have been sufficient to establish probable cause to issue a search warrant. That is, were the facts and circumstances within Officer Kelly's knowledge, together with the information from the CI, sufficient to support a reasonable belief that evidence or contraband were in the Knapper residence. See State v. Duncan, 420 So.2d 1105 (La.1982); State v. Manso, 449 So.2d 480 (La.1984), cert. den. 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984); State v. Hechavarria, 575 So.2d 444 (La.App. 4th Cir.1991).
When considering an affidavit for a search warrant, the task of the issuing magistrate is simply to make a practical commonsense decision whether, given all the circumstances set forth in the affidavit, including the veracity, reliability and the basis of knowledge of the informant, there is a "fair probability" that the contraband or evidence will be found in a particular place. State v. Hechavarria, supra; citing State v. Hernandez, 513 So.2d 312, 316 (La.App. 4th Cir. 1987), writ den. 516 So.2d 130 (La.1987).
Officer Kelly received information from a CI that the Knappers had illegal narcotics in the residence. In dealing with search warrants based on confidential tips, the Supreme Court has adopted a "totality of the circumstances" test asking "whether, given all of the circumstances set forth in the affidavit before [the magistrate], including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 237, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). An allegation of past reliability is not necessarily a sine qua non to sufficiency of probable cause as long as a common sense reading of the affidavit supports the conclusion that the informant is credible and his information is reliable. State v. Clay, 408 So.2d 1295 (La.1982).
In the instant case, the affidavit for the search warrant recited that the CI in question was "reliable." Therefore, Officer Kelly had information from a reliable CI that there were illegal drugs in the residence. Officer Kelly independently verified some of the information given by the CI. He verified that a subject living at 2526 St. Bernard Avenue drove a white Chevrolet Blazer. Officer Kelly also verified that Corneal Knapper was engaged in the distribution of illegal narcotics by observing Knapper leave his residence and drive to locations where he engaged in what appeared to be narcotics transactions. The CI informed Kelly that prospective customers would call Knapper's beeper, leave their telephone numbers, and Knapper would telephone them back and arrange to deliver the narcotics to them in his white Blazer. The observations by Officer Kelly were entirely consistent with this information.
Considering the totality of the circumstances, we believe at the point the officers observed what appeared to be a second illegal drug transaction, they had probable cause to believe that illegal drugs were being sold out of the Knapper residence and that there was a fair probability that evidence or contraband, i.e., illegal drugs, would be found in the Knapper residence. Officer Kelly testified that he and his partner went to the residence with the intention of securing it while they obtained a search warrant, the affidavit for which would have been based on the facts and circumstances just discussed.
Considering all of the facts and circumstances, we find that it is more probable than not that, even had Officer Kelly not entered the Knapper residence when he did, a search warrant ultimately would have been issued for the residence and the cocaine inevitably discovered. Therefore, the trial court erred in granting the defendants' motion to suppress all of the evidencethe cocaine, the firearms, the currency and the assorted pieces of jewelry.
For the foregoing reasons, we grant relator's application for supervisory writs and reverse the judgment of the trial court.
WRIT GRANTED; REVERSED.