733 So.2d 1227 (1999)
STATE of Louisiana
v.
Jason COOK, et al.
No. 99-K-0091.
Court of Appeal of Louisiana, Fourth Circuit.
May 5, 1999.
*1229 Harry F. Connick, District Attorney, Robin Pittman, Assistant District Attorney, Amie Daigle Stassi, Assistant District Attorney, New Orleans, Louisiana, Attorneys for the State.
Court composed of Judge WILLIAM H. BYRNES III, Judge JOAN BERNARD ARMSTRONG and Judge DENNIS R. BAGNERIS, Sr.
BYRNES, Judge.
The State requests a review of the trial court's ruling that granted the motion to suppress. We reverse and remand.
On March 31, 1998 the State filed a bill of information charging Jason Cook, Sean Griffin, Garland Payne, Charles Rhodes, and Clifford Nicholas with possession of 200 to 399 grams of cocaine, a violation of La. R.S. 40:967(F)(2). After a hearing on September 25, 1998 the trial court granted the motion to suppress the evidence on November 13, 1998. The State's writ application followed.
*1230 New Orleans Police Officer Maurice Palmer, who was assigned to Special Operations Division, testified that on March 14, 1997 he was conducting a surveillance of 9028 Olive Street. The officers had received information through a narcotics hotline that drugs were being sold from an apartment at that address. He and Officer Todd Henry positioned themselves so that they had an unobstructed view of the apartment building. At about 11:30 p.m. or midnight he observed Clifford Nicholas make a hand-to-hand transaction with an unknown subject in front of that address. After the hand-to-hand transaction, Nicholas walked to 9023 Olive Street and then went back and stood in front of 9028 Olive Street. Officer Palmer stated that when he set up the surveillance, he saw Nicholas "coming out of 9028 Apartment "B" Olive Street." Officer Palmer answered affirmatively when he was asked whether Nicholas ever went back inside 9028 Olive Street.
Officer Palmer said that Sean Griffin exited 9028 Olive Street and met with an unknown black male. After another hand-to-hand transaction, the unknown man walked off. Officer Palmer explained that the officers did not stop either buyer because they did not want to jeopardize the surveillance and the investigation. Griffin and Nicholas attempted to drive away, and they were stopped by Officers Herbert Warren and Roddy Boady at a location on Palm Street.
Officer Palmer stated that then the officers observed Jason Cook leaving apartment B at 9028 Olive Street. The officers decided to move in because they feared the destruction of evidence and discovery of the surveillance. The officers decided to stop Cook. Seeing the police officers, Cook attempted to run back into apartment B. Cook was allowed entry, and the officers followed him inside, but the lights were turned off. Officer Palmer said that Charles Rhodes was seated in a chair near the front door with an assault rifle on his lap. Garland Payne was sitting on the sofa next to Rhodes.[1] Next to him was a revolver. A six shot revolver and a 9 mm. handgun were on the floor next to the sofa.
Officer Palmer stated that a number of items were seized from the apartment including twelve pieces of individually wrapped pieces of white rock, a clear plastic bag containing six individually wrapped pieces of white rock, ten pieces of white rock, and glass pipes. The items were indicative of packaging and selling crack cocaine. The objects were in plain view on the coffee table. The officers also found a 1990 subpoena in the name of Clifford Nicholas at 9023 Olive Street, the house to which he had walked earlier.
On cross-examination Officer Palmer stated that he saw currency exchanged for a small object in both transactions. He did not witness handshakes. Officer Palmer was at the location about fifteen minutes before he saw the first transaction involving Nicholas. He said that he was using binoculars during the surveillance and the street was well-lighted. When he was asked "where he [Nicholas] came from" when he was first observed, Officer Palmer said: "Came from 9028." Then he was asked: "He came from 9028?" He answered: "Right. He was standing in front of 9028." Then he was asked: "So when you got there he was standing in front of 9028 already?" Officer Palmer answered: "Right." Later the officer answered negatively when he was asked whether he ever saw Nicholas enter the door of apartment B or any apartment at 9028 Olive Street. Officer Palmer stated that Nicholas went inside the building at 9023 Olive Street for about a minute, but 9023 Olive Street was never searched. He admitted that the information was not provided by a reliable source. It was information from a hotline. He said that no *1231 contraband was found on Nicholas or Griffin. He did not see Cook or Rhodes enter the apartment or participate in any transaction.
According to Officer Palmer, the surveillance lasted about thirty to forty-five minutes. He observed two transactions; both occurred in front of 9028 Olive Street. He agreed that he did not see Cook participate in the transactions. He said that Officers Eric Hessler and Todd Morrell attempted to stop Cook when he tried to "make entry back into the apartment." The officers chased Cook, who was "running into the apartment." The officers found no bills, leases, or other documentation with Cook's name on it. They found no drugs, cellular phone, or gun on Cook.
On redirect Officer Palmer was asked whether he saw Nicholas ever go into 9028 Olive Street; he answered: "I just saw him standing in front of 9028." When asked about Griffin, he answered: "I think I saw Mr. Griffin leave from 9028, Apartment "B" and walk out in front of that location."
On recross-examination Officer Palmer was asked whether Griffin ever went inside the residence at 9028 Olive Street. He answered: "I think I saw himoriginally when I first set up I think I saw him come from that location, from Apartment `B'."
Defense counsel argued that the officers did not see Cook involved in a hand-tohand transaction outside. The officers did not see him inside the apartment with the drugs and guns. Counsel contended that Cook rode to the apartment on a bicycle, knocked on the door and was walking away when the officers chased him. This conflicts with Officer Palmer's statement that he never saw Cook go into the apartment, giving rise to the conclusion that Cook was inside the apartment during the 30-45 minute surveillance because Officer Palmer did not see him enter during that time period, and then saw him exit from the apartment. Although no documents tied Cook to 9028 Olive Street, and he did not have keys, Cook was inside the apartment for at least 30-45 minutes.
The State argues that the officers corroborated their tip by witnessing two hand-to-hand transactions. After that they had "reasonable suspicion to detain anyone coming from 9028 Olive Street." The officers had reasonable cause to stop Cook and to secure the residence. The State contends that Cook's flight into the apartment, along with the other factors, ripened the reasonable suspicion into probable cause. When Cook ran into the apartment, the officers were in hot pursuit or their entry into the apartment was justified by exigent circumstances. They then saw the contraband in plain view; regardless, they had a right to secure the apartment before obtaining a search warrant. The trial court mentioned the doctrine of inevitable discovery as well.
Probable cause to arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing the person to be arrested has committed a crime. State v. Wilson, 467 So.2d 503 (La.1985), certiorari denied Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985).
"Reasonable suspicion" for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect's rights. State v. Matthews, 94-2112 (La.App. 4 Cir. 4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94), 633 So.2d 819.
In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy that the search and seizure entails. State v. Tucker, *1232 604 So.2d 600 (La.App. 2 Cir.1992), affirmed in part, reversed in part on other grounds, 626 So.2d 720 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir. 1993), writ denied, 626 So.2d 1177 (La. 1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir. 1991), writ denied, 578 So.2d 131 (La. 1991). Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La.C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La.1983), certiorari denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Noto, 596 So.2d 416 (La.App. 4 Cir.1992); State v. Preston, 569 So.2d 50 (La.App. 4 Cir.1990).
In State v. Huntley, 97-0965, p. 3 (La.3/13/98); 708 So.2d 1048, 1050, the Louisiana Supreme Court found that: "A reviewing court must take into account the `totality of the circumstancesthe whole picture,' giving deference to the inferences and deductions of a trained officer that might well elude an untrained person.... The court must also weigh the circumstances known to the police `not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'..."
The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but, rather whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. McKinney, 93-1425 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120, writ denied 97-1339 (La.12/19/97), 706 So.2d 444; State v. Lambright, 525 So.2d 84 (La.App. 3 Cir. 1988), writ denied 530 So.2d 83 (La.1988). Deference should be given to the experience of the policemen who were present at the time of the incident. State v. Short, supra. A certain look or gesture may not mean anything to the ordinary person; however, a policeman has sound judgment based on long experience to interpret these acts.
In State v. Ganier, 591 So.2d 1328 (La. App. 4 Cir.1991), This court found that two factors were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
... Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there.

State v. Ganier, 591 So.2d at 1330. [Emphasis added.]
Recently the Louisiana Supreme Court considered an anonymous tip and the necessary level of corroboration to constitute reasonable cause for an investigatory stop in State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268.[2] The Court *1233 applied the totality of the circumstances test set forth in Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), stating:
... Although reasonable suspicion is a less demanding standard than probable cause, "the content of information possessed by police and its degree of reliability" remain significant factors in the analysis. Id. at 330, 110 S.Ct. 2412.... Of particular significance to the Court [in White] was the informant's prediction of White's "future behavior." ... Emphasizing the insider quality of predictive information, the Court concluded that verification of the "innocent" aspects of the anonymous tip gave police reason to believe that the allegations of criminal activity was probably true as well.
Against this legal landscape, we must determine whether the anonymous tip, together with subsequent corroboration by police officers, provided reasonable suspicion for the investigatory detention of the defendant. As noted above, in assessing reasonable suspicion for a stop pursuant to an anonymous tip, the White court stressed corroboration and predictiveness. In the instant case, it is true that the officers were able to corroborate certain aspects of the anonymous tip, including the defendant's name, his physical description and the location of the described vehicle.... Since the tip did not provide sufficiently particular information concerning defendant's future actions, an important basis for forming reasonable suspicion was absent. The officers, therefore, lacked reasonable grounds to believe that the informant possessed reliable information about defendant's alleged illegal activities. [Emphasis in original.]

Robertson, at 4-5, 721 So.2d at 1270.
The court went on, however, to note that the result could have been different:
We note that the police were not powerless to act on the non-predictive, anonymous tip they received. The officers could have set up more extensive surveillance of defendant until they observed suspicious or unusual behavior. Furthermore, if, after corroborating readily observable facts, the officers had noticed unusual or suspicious conduct on defendant's part, they would have reasonable suspicion to detain him.... In the absence of any suspicious conduct or corroboration of information from which police could conclude that the anonymous informant's allegation of criminal activity was reliable, we must conclude that there was no reasonable suspicion to detain defendant....
Id., at 5-6; 721 So.2d [at] 1271.
In State v. Hathaway, 411 So.2d 1074 (La.1982), the officers received information from a confidential informant, who had previously supplied information that had led to arrests and convictions. The officers were told that Joseph Woods, a known drug user, would be delivering a quantity of preludes to an address in the 1200 block of South White Street, and that he had a gun. The officers went to the area and observed Woods walking down Clio Street. He was turning around *1234 and looking up and down to determine whether someone was watching him. The officers drove to the house and saw Woods, another known narcotics user, Vincent Vantress, and Hathaway, who was not known to the officers. The officers exited their unmarked car and declared: "Police officers, freeze." Hathaway and Vantress ran inside the residence. One officer followed and kicked in the locked door to gain entry. The officer saw Hathaway with a revolver. Vantress was flushing the toilet in the bathroom. He also had a revolver. A syringe was found in the toilet. The Supreme Court affirmed the denial of the motion to suppress in the defendant's Crosby appeal. The Court concluded that the tip from a reliable informant, the officers' observation of Woods' furtive movements, and the fact that Woods met Vantress, another drug user, constituted reasonable cause to detain Woods and Vantress. When Vantress and Hathaway ran into the apartment, the reasonable cause ripened to probable cause to arrest Vantress. The possible escape of Vantress and the destruction of evidence justified the entry under the exigent circumstances exception. Once legally inside the apartment, the officers had probable cause to arrest Hathaway because he was pointing a gun at the officer. Id.
In State v. Blue, 97-2699 (La.App. 4 Cir. 1/7/98), 705 So.2d 1242, writ denied, 98-0340 (La.3/27/98), 716 So.2d 887, the officers received a tip from a reliable confidential informant that two men identified as "Blue" and "Chris" were selling drugs from 2807 Willow Street, apartment B. The informant described each seller's clothing. Ten minutes after receiving the tip, the officers went to the address. They observed Blue, whose clothing matched one of the descriptions, walk out of apartment B onto the porch. Blue saw the unmarked but well-known police vehicle, appeared surprised, turned, and went back into the apartment. The officers followed Blue inside to the bathroom where he attempted to flush the contents of his hand down the toilet. The officers retrieved one plastic container with white powder and one piece of plastic containing white powder. The trial court suppressed the evidence and this Court affirmed. This Court concluded that the officer had only reasonable cause to detain Blue. They did not have the probable cause to arrest him when they followed him inside the apartment: "Although these circumstances would have given the officers reasonable suspicion to detain the defendant if he had remained outside, it does not appear that they supplied probable cause to arrest him, which the officers needed to follow him inside the apartment." Id., p. 7, 705 So.2d 1246.
In the present case the officer stated factors which were sufficient for reasonable suspicion to justify a investigative stop of the defendant Cook: complaints of narcotic activity being conducted at 9028 Olive Street, apartment "B"; the two suspicious hand-to-hand drug transactions seen by Officer Palmer in front of that address while he conducted a surveillance; and the fact that Cook was in the apartment during the 30-45 minute surveillance and at the end of the surveillance Cook exited from that address. Although the actions of the defendant Cook may have been innocent if considered individually, under the totality of the circumstancesthe whole picture, giving deference to the inferences and deductions of a trained officer that might well elude an untrained person, the officer enunciated reasons to justify the investigatory stop.
When Cook ran back into the apartment, reasonable cause ripened to probable cause to arrest him. Like Hathaway, Cook ran back into the apartment. He did not just turn and reenter like Blue. Also in Blue, supra, the officers did not observe drug transactions in front of the address identified by the tipster. In the present case Officer Palmer had just observed two drug transactions in front of *1235 the address, and Cook ran back into the apartment when he saw the police.
In State v. Page, 95-2401, p. 10 (La.App. 4 Cir. 8/21/96), 680 So.2d 700, 709, writ denied 96-2352 (La.2/21/97), 688 So.2d 522, this Court discussed the warrantless entry into a protected area:
There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320, 1326 (La. 1979), cert. den., Rudolph v. Louisiana, 454 U.S. 1142, 102 S.Ct. 1001, 73[71] L.Ed.2d 294 (1982). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a "protected" area that, without those exceptional circumstances, would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence. State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
A warrantless entry into the premises was justified because exigent circumstances existed as an exception to the warrant requirement. The police had probable cause to arrest Cook, and the officers were justified in entering and securing the residence to prevent the destruction of evidence before a warrant was obtained.
The warrantless entry was also justified under the inevitable discovery doctrine. In State v. Knapper, 626 So.2d 395, 396 (La.App. 4th Cir.1993), writ denied 630 So.2d 798 (La.1994), this court stated:
In Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.[2d] 377 (1984), the United States Supreme Court adopted the "inevitable discovery" doctrine, holding that evidence found as a result of a violation of a defendant's constitutional rights, would be admissible "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered." The so-called "inevitable discovery doctrine" has been followed by Louisiana courts. State v. Nelson, 459 So.2d 510, (La.1984), cert den., Nelson v. Louisiana, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 322 (1985); State v. Clark, 499 So.2d 332 (La.App. 4th Cir.1986).
Under the "inevitable discovery doctrine", in Knapper this court found that the facts were sufficient to establish probable cause that there were drugs or evidence in the residence, and the officers would have received a search warrant. In the present case, the officers had a right to enter the residence before obtaining a search warrant based on the exceptions of exigent circumstances and the inevitable discovery doctrine.
In order for an object to be lawfully seized pursuant to the "plain view" exception to the Fourth Amendment, (1) there must be a prior justification for the intrusion into a protected area; (2) in the course of which the evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. State v. Hernandez, 410 So.2d 1381, 1383 (La.1982); State v. Tate, 623 So.2d 908, 917 (La.App. 4 Cir.), writ denied 629 So.2d 1126 and 1140 (La. 1993). In Tate, this court further noted: "In Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Court held that evidence found in plain view need not have been found "inadvertently" in order to fall within this exception to the warrant requirement, although in most cases evidence seized pursuant to this exception will have been discovered inadvertently." Tate 623 So.2d at 917.
In the present case, when the officers entered the apartment, the officers, without intruding into a "protected area", saw drugs that were in plain view on the coffee table. The guns were also in plain view.
*1236 The evidence was properly seized, and the officers had probable cause to arrest all of the defendants. The officers had probable cause to arrest Cook, Rhodes, and Payne who were inside the apartment in the vicinity of the evidence. The officers had probable cause to arrest Griffin and Nicholas because they participated in apparent drug transactions in front of 9028 Olive Street, Apartment "B", the address that was given in the anonymous tip, and drugs were found in that residence.
Accordingly, the ruling of the trial court is reversed, and the motion to suppress is denied.
WRIT GRANTED; REVERSED AND REMANDED.
NOTES
[1] Officer Palmer clarified that the police report was incorrect when it stated that Sean Griffin was inside the apartment. The third suspect in the apartment was Cook after he ran back inside.
[2] In Robertson, the police received an anonymous tip from a concerned citizen on the "ATF" Hotline. The citizen described an individual known as "Will," who drove a dark green Pontiac. According to the citizen, Will, who was described in detail, was involved in drug sales in the Magnolia Housing Development. The citizen gave the police the location of Will's car when he was not using it to deliver narcotics. Based on this tip, police officers drove to the location provided and found a vehicle matching the description. While the officers watched, the vehicle was driven away. The officers followed until the driver parked the vehicle and exited. At that point, the police approached and asked the driver his name. He identified himself as William Robertson and he matched the description given in the tip. The officers then detained the defendant and his vehicle while a canine detection unit responded. After the dog alerted on the vehicle, it was searched and narcotics seized. The trial court subsequently denied the motion to suppress; this Court affirmed in an unpublished opinion. State v. Robertson, unpub., 97-1950 (La.App. 4 Cir. 11/5/97), 701 So.2d 272. The Louisiana Supreme Court reversed.