536 So.2d 402 (1988)
STATE of Louisiana
v.
Robert TASSIN.
No. 87-KA-2529.
Supreme Court of Louisiana.
December 12, 1988.
Rehearing Denied January 19, 1989.
*403 William J. Guste, Jr., Atty. Gen., John M. Mamoulides, Dist. Atty., Dorothy Pendergast, Guy Delaup, Asst. Dist. Attys., for plaintiff-appellee.
Bruce Whittaker, Indigent Defender Bd., New Orleans, for defendant-appellant.
WATSON, Justice.
A Jefferson Parish Grand Jury indicted Robert Tassin, his wife Georgina Tassin, and Sheila Mills for the first degree murder of Edward Martin, in violation of LSA-R.S. 14:30.[1] The state later reduced the charge *404 against Georgina Tassin and Sheila Mills to armed robbery. Robert Tassin was found guilty by a jury of first degree murder and was unanimously sentenced to death after three aggravating circumstances were found. This is the direct appeal of his conviction and sentence.[2]

FACTS
On November 5, 1986, Edward "Eddie" Martin, a tugboat captain, and his deckhand, Wayne Stagner, cashed their paychecks at Schnell's Restaurant and Bar in Marrero, Louisiana. Afterward, they went to the Shady Lady Lounge where Martin played pool and a drinking game while Stagner drank beers at the bar. Martin met Sheila Mills and others there and bought rounds of drinks.
Shortly before midnight, the two men left the bar. As they approached Martin's two-door silver Thunderbird, Sheila Mills asked if they wanted to buy some cocaine. Martin did and got out of the car to allow Sheila to sit between them in the front seat. They drove to a small bar but Sheila failed to contact her drug source. She directed the men to the residence of her neighbors, Robert and Georgina Tassin.
While Martin and Stagner waited in the car, Sheila went inside and told the Tassins the two men had just been paid after working offshore. Robert Tassin told her he did not have any cocaine to sell but did have Dilaudid. However, he told Sheila he would not sell any drugs unless Sheila obtained enough money to supply drugs for all of them. Robert sent Sheila outside to get money. Sheila returned to the car and asked Martin if he were interested in buying Dilaudid. When he declined, Sheila asked him to furnish her drug money in exchange for sex back at the boat. Sheila returned to the house with $55. Robert, Georgina, and Sheila each injected a Dilaudid capsule by filling a syringe with a crushed capsule mixed with water.
When Sheila reentered the house, Stagner suggested that he hold some of Martin's money, fearing that Martin in his intoxicated state might gave away his whole paycheck. Martin agreed and gave Stagner a portion of his money which Stagner put into his left shoe. Stagner put his own money into his right shoe. Inside the house, Sheila, Robert and Georgina discussed a plan to rob the two men and take their money to buy drugs.
Sheila and the Tassins left the house and told the two men they would have to get the drugs from a friend's apartment. At Sheila's direction, the group went in Martin's car to the Tres Vidas Apartments, the home of Darryl Macaluso and Mary Ann Valverde. Tassin maintained that he accepted the ride to get new syringes. Also, he wanted Martin and Stagner to think that he did not have drugs in his possession in case they were police officers. The state claims that Robert went there to borrow a gun. His wife testified that he had a bulge in his pocket when he emerged. On leaving the apartment, Robert Tassin got into the back seat of the car behind Martin, the driver, while Georgina Tassin got in the back seat behind Stagner, the passenger. Sheila returned to the front seat between Martin and Stagner. On the ride back to the Tassins' house, while crossing the Lapalco Bridge, Sheila told Martin she was *405 feeling sick. She directed him off the road and underneath the bridge. When Stagner let Sheila out of the front seat, she walked to the rear of the car.
According to the state's theory, Stagner returned to the front seat. As he reached for some cigarettes on the dashboard, Robert Tassin shot him in the back. Stagner turned and saw Tassin shoot Martin three times in the back and the neck. Stagner bolted out of the car and was shot again in the left leg.
According to the defense, after Sheila left the car, Stagner leaned back into the car from the front seat with a pistol in his hand which he pointed at Robert Tassin's face saying "Give me the pills and your money." Tassin dove for the gun, placing his hand between the hammer and the firing pin so that it could not fire, thereby cutting his hand. Tassin wrestled the gun away from Stagner. As he did so, Martin told Stagner to "Get the other gun." Tassin saw Stagner reach down as if he were retrieving something and Tassin "freaked out". He began firing wildly, shooting Stagner first; then, at a movement from Martin, firing in Martin's direction. After Stagner ran away, Tassin said he calmed down and pulled Martin's body out of the car, laying it on the roadway.
According to the state, Robert Tassin checked Martin's pockets for money before dragging the body out of the car and into a ditch under the bridge.
Meanwhile, Stagner had staggered to the street and collapsed in the center of an intersection where he hailed a passing car. Stagner asked the occupants to summon help for himself and his captain who had been shot and might be dead. Stagner then lost consciousness and did not regain it until he was in the hospital.
Subsequently, Sheila drove the Tassins in Martin's car back to the Tassin residence. Georgina and Sheila went inside while Robert Tassin drove the car into the Westwego Canal (Bayou Signette), which was 100 to 150 yards from his house. He also threw the gun into the canal. He then consumed all the drugs he had and purchased more the next day.
When Stagner regained consciousness, he told the police that he and Martin had been shot by hitchhikers they had picked up. Later, he admitted the hitchhiker story had been fabricated because he did not want his wife to know he had been out drinking with other women. From an ambulance, he directed the police to the Tassins' residence. Arrest warrants were issued for the Tassins on November 10, 1986, and they turned themselves in to the police on November 12, 1986, after hearing on the news that they were wanted for the murder.
The jury found Robert Tassin guilty of first degree murder, rejecting his claim of self-defense. The jury unanimously recommended the imposition of the death penalty, finding three statutory aggravating circumstances: (1) that the murder was committed during the perpertration of an armed robbery; (2) that the offender knowingly created a risk of death or great bodily harm to more than one person; and (3) that the offense was committed in a heinous, atrocious or cruel manner.
In this direct appeal of his conviction and sentence, Tassin assigns twenty-two assignments of error, arguing nine of the assignments in six arguments. The assignments argued on appeal will be treated below. Although the unargued assignments will be treated in an unpublished appendix, all assignments of error are reviewed in a capital case. State v. Kirkpatrick, 443 So.2d 546 (La.1983), cert. den. 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984).

ASSIGNMENT OF ERROR NUMBER FOUR
Tassin argues that the trial court excused prospective jurors Avist, Klotz, Johnson and Brown for cause without properly applying the standards of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) and LSA-C.Cr.P. art. *406 798.[3] Tassin also contends that the trial judge erroneously excused juror Pizzolatto for bias and juror Magee for inability to follow the law. LSA-C.Cr.P. art. 797.[4]
LSA-C.Cr.P. art. 798(2) closely tracks the language of Witherspoon, which found it proper to exclude prospective jurors for cause if they made it "unmistakably clear: (1) that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt."[5]
In Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the Witherspoon standard was clarified as "whether the juror's views [on capital punishment] would `prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"[6]Witt held that juror bias need not be proved with "unmistakable clarity", because, in some circumstances, no amount of time spent in question and answer could show that a juror was clearly biased. Witt stressed the deference due a trial judge's determination of whether a prospective juror's views on capital punishment warrant a challenge for cause.
In voir dire, prospective jurors Avist and Klotz stated they did not agree with the death penalty and thought it should not be a part of our law. Both Avist and Klotz signified they could not consider the death penalty as an alternative sentence. Defense counsel did not attempt to rehabilitate either of them and did not object to the challenge for cause.
Prospective juror Johnson gave conflicting responses about whether she could impose the death penalty, but finally maintained that she would not be able to follow the law and consider the death penalty in her deliberations. Defense counsel did not attempt further rehabilitation but objected to the challenge for cause.
Prospective juror Brown gave conflicting answers concerning her ability to consider the death penalty. Brown's vacillating responses, to both the attorneys and the court, indicated she had difficulty in understanding the questions. At one point, Brown maintained she could not send anyone to jail unless she had witnessed the crime.
*407 The trial court followed the dictates of LSA-C.Cr.P. arts. 797 and 798 and the federal standards of Witherspoon and Witt. There was no error in excusing these jurors for cause. State v. Brown, 514 So.2d 99 (La.1987), cert. den. ___ U.S. ____, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988); State v. Ward, 483 So.2d 578 (La. 1986), cert. den. 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 168 (1986); State v. Jones, 474 So.2d 919 (La.1985), cert. den. 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986).
Death qualification of a jury in capital cases does not violate a defendant's right to a jury representing a cross-section of the community. Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); Buchanan v. Kentucky, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987).
In the questioning of prospective juror Pizzolato, it developed that her brother had been convicted of a felony after shooting a man he found in bed with his wife. He had been sentenced to three years probation. Ms. Pizzolato maintained that she would be biased in favor of the defendant. The state challenged her for cause and defense counsel objected. The trial judge correctly excused this prospective juror under LSA-C.Cr.P. art. 797(2) for bias. State v. Ward, supra; State v. Smith, 437 So.2d 802 (La.1983).
Prospective juror Magee indicated that, even if the state proved the defendant guilty beyond a reasonable doubt, he would not be able to follow the law and return a verdict of guilty. Over defense objection, the state moved that Magee be challenged for cause. The trial judge correctly excused this prospective juror under LSA-C. Cr.P. art. 797(4) since the juror indicated he would not accept the law given by the court.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER SIX
Tassin maintains that the trial judge erred in allowing Dr. Alvaro Hunt, a state expert, to testify about matters beyond his field of expertise. Dr. Hunt was the doctor who conducted Edward Martin's autopsy. Qualified as an expert in forensic pathology with knowledge of wound ballistics,[7] Dr. Hunt testified about the number and placement of gunshot wounds on Martin's neck and back and the powder tattooing or burning surrounding one of the wounds. He estimated the gun was four to twenty-four inches from Martin's back when fired. On redirect examination, the prosecutor asked if the wounds were consistent with someone in the driver's seat of the car being shot by someone in the backseat behind the driver and Dr. Hunt said that they were.
Tassin argues that the trial judge permitted Dr. Hunt to usurp the jury's function in determining a crucial issue at trial. Because the doctor had already testified as to the range from which at least one of the shots was fired, and the angle at which the bullet entered Martin's body, this hypothetical was not beyond his expertise. LSA-R. S. 15:464.[8] On recross examination, Dr. Hunt admitted that he had not viewed the vehicle and did not know what type of weapon was used. He also qualified his testimony by saying that Martin's wounds were consistent with someone shot by a passenger. The fact that Tassin shot Martin from the backseat was not contested during trial and was not a crucial issue. The jury's role as sole determiner of the facts was not usurped. Compare State v. White, 450 So.2d 648 (La.1984) and State v. Montana, 421 So.2d 895 (La.1982).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TEN
Tassin argues that the trial court erred in admitting into evidence certified copies of his prior convictions contrary to LSA-R. *408 S. 15:495.[9] On direct examination, Tassin admitted that he had had a previous New York conviction for attempted burglary of a pharmacy and possession of a firearm, and a Louisiana conviction for possession of Diazepam.[10] Over defense objection, the conviction records were admitted into evidence.
Tassin argues that the New York conviction record shows he had originally been charged with two more serious crimes and pled guilty when the charges were reduced. The Louisiana conviction record indicates he had been charged in one indictment with two counts of a crime, but pled guilty to one count in exchange for dismissal of the other. Tassin argues the documents contain sentencing information, a plea form detailing the rights he waived, including his right to appeal, and also includes specific conditions of his probation. Tassin maintains that the rule of LSA-R.S. 15:495 should be narrowly construed. Since he took the stand and admitted the prior convictions, he claims the introduction of the conviction records was improper, constituting reversible error.
A defendant places his credibility at issue when he takes the stand. Like any other witness, his credibility can be impeached by showing that his general reputation for truth or moral character is bad,[11] that he "is biased, has an interest, ... has been corrupted",[12] or that he has previously been convicted of a crime.[13]State v. Nash, 475 So.2d 752 (La.1985).
State v. Jackson, 307 So.2d 604 (La.1975) held that it was not error to cross-examine a witness as to details of a conviction for the purpose of establishing the true nature of the offense. This rule was applied to a defendant testifying in his own defense in State v. Elam, 312 So.2d 318 (La.1975). State v. Brown, 371 So.2d 746 (La.1979), rev'd on other grounds, 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980) held that a prosecutor's questioning about the original charges brought in connection with prior convictions was within the limits of Jackson.
State v. Oliver, 387 So.2d 1154 (La.1980) cautioned that the Jackson rule should be narrowly construed to avoid prejudice to the accused. In Oliver, the prosecutor attacked the defendant's credibility by referring to an alleged but uncharged offense, which was found to constitute reversible error. State v. Connor, 403 So.2d 678 (La.1981) held that the Jackson rule allows only limited questioning: "Minor details of far ranging and irrelevant matters such as conditions of probation, alleged but uncharged offenses and charges dropped in response to a guilty plea may not be used to cast doubt on a defendant's credibility."[14] Accord, State v. Williams, 445 So. 2d 1171 (La.1984).
*409 There was no error in the introduction of Tassin's New York conviction record, which showed the true nature of the offense. State v. Brown, supra.[15] The trial judge erred, however, in admitting the Louisiana conviction record, which contained probation conditions and the statement that one charge was dropped in exchange for a guilty plea. This error does not mandate reversal, however, because Tassin was not unduly prejudiced by the document's introduction. On direct examination, Tassin admitted that he had pled guilty to both the New York and Louisiana charges, and that he had done so pursuant to a bargain in which the authorities dropped charges against his wife. The fact that a plea bargain existed was repetitive. The evidence that there was probation and a charge was dropped was not of such magnitude that the jury would be inclined to convict Tassin of the present charge because it believed him to be a "bad person", especially in light of the evidence of his guilt. State v. Connor, supra; State v. Neslo, 433 So.2d 73 (La.1983). Compare State v. Oliver, supra. The error here was harmless.
Tassin's argument that the jury was prejudiced by seeing he had appeal rights has been previously reviewed and dismissed by this court. State v. Copeland, 530 So.2d 526 (La.1988). The jury eligible public is aware that certain appellate procedures exist.
This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBERS ELEVEN, THIRTEEN, FIFTEEN AND SIXTEEN
Tassin argues that the state's evidence was insufficient to convince a rational jury beyond a reasonable doubt that the killing of Eddie Martin was not committed in self defense. Tassin also argues there was insufficient evidence to prove beyond a reasonable doubt the three aggravating circumstances found by the jury in the sentencing phase of the trial.
Due process requires that a criminal defendant be convicted only upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); LSA-R.S. 15:271; State v. Brown, 301 So. 2d 605 (La.1974). The standard of a reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[16]
Tassin is charged with committing the first degree murder of Martin, a violation of LSA-R.S. 14:30. The elements of first degree murder proved by the state here were that the murder occurred during the course of an armed robbery, or attempted armed robbery, and that Tassin had the specific intent to kill more than one person.[17] Armed robbery is defined in LSA-R.S. 14:64 as the taking of anything of value from another by force or intimidation, while armed with a dangerous weapon. Because Tassin asserted self-defense, the burden was on the state to prove beyond a reasonable doubt that the homicide was not perpetrated in self-defense. State v. Brown, 414 So.2d 726 (La.1982); LSA-R.S. 14:20.
The state relied primarily on the testimony of Georgina Tassin and Wayne Stagner to prove the elements of the crime. Regarding the occurrence of an armed robbery, or attempted armed robbery, Georgina's testimony established that the Tassins and Sheila Mills discussed a plan to rob the two men of their money in order to buy *410 drugs, that a gun was obtained from their friends' apartment,[18] that Tassin was in the backseat behind Martin on the left side of the car, that she was on the right side behind Stagner, that Tassin pulled a gun out of his waistband and shot Martin three times in the back and neck area, that Tassin shot Stagner once in the back and once in the leg as he escaped the car, that Tassin pulled Martin's body out of the car and checked his pockets for money, and that Martin's car was taken after Tassin placed Martin's body in a ditch underneath the bridge. Georgina never saw a gun in the possession of Martin or Stagner.
Wayne Stagner's testimony corroborated Georgina's regarding the seating arrangement and the shooting. When he reentered the car after letting Sheila out under the bridge, Stagner was shot in the back. He then saw Robert Tassin shoot Martin three times in the back and neck. Tassin shot Stagner again as he was leaving the vehicle, striking him in the left leg. Stagner testified that he and Martin had not consumed any drugs and were not in possession of any weapons.
Other state witnesses corroborated the testimony of the two key witnesses. Dr. Alvaro Hunt testified that the wounds on Eddie Martin's body were consistent with Martin being shot from behind at close range. Detective Hibbs, who was in charge of investigating the scene, testified that Martin's body was found in the ditch underneath the bridge. The pockets of Martin's pants had been turned out and his wallet, change, and comb were scattered about the scene. A rational juror could have found beyond a reasonable doubt that Tassin killed Martin during the perpetration of an armed robbery.
Tassin argues that the testimony of Stagner and Georgina was suspect. Georgina testified on direct examination that she had accepted a plea bargain with the state, pleading guilty to armed robbery in exchange for her testimony at her husband's trial. She also testified that she had not been sentenced at the time of trial and was facing a possible sentence of 5 to 99 years imprisonment.[19] Tassin argues that Stagner's testimony was not credible because he had first told the police one story (about hitchhickers), and then told another one.
Tassin took the stand in his own defense and testified that it had been Stagner who threatened him with a gun. After wrestling the gun away from Stagner, he panicked and began shooting when he thought Stagner had an additional weapon. He claims the physical evidence supports this theory. Joseph Warren, an expert in forensic biology, testified that the shirt Stagner was wearing that evening contained both Type "A" and Type "O" blood. Eddie Martin, Sheila Mills and Wayne Stagner had Type "O", while Robert and Georgina Tassin had Type "A". Tassin argues this corroborates his story of a struggle over the gun with Stagner during which he cut his hand. Alex Vega, an expert in firearms' identification, testified that the two bullet holes in the automobile were not consistent with someone firing directly from the middle of the backseat. Tassin argues that a watch and chain necklace left on Martin's body were inconsistent with a robbery theory, as was Martin's wallet and beeper which were on the ground.
Defense counsel was permitted to investigate fully all contested issues. In an attempt to show Georgina's bias, defense counsel thoroughly explored the terms of her plea bargain with the state. LSA-R.S. 15:492; State v. Brady, 381 So.2d 819 (La. 1980). Stagner's prior inconsistent statement accusing hitchhikers of the crime, and his reason for giving the statement, were elicited in both direct and cross-examination. Therefore, the jury had before it all the available information regarding any bias or inconsistency in the state witnesses' testimony.
When there is a conflict in testimony between witnesses, the factfinder must *411 make credibility determinations. State v. Cobbs, 350 So.2d 168 (La.1977). Here, the jury believed the testimony of Georgina Tassin and Wayne Stagner, which was corroborated by the other state witnesses.
A rational jury could have found that Tassin had the specific intent to kill or greatly harm more than one person. Specific intent can be inferred from the circumstances. LSA-R.S. 15:445; State v. Williams, 383 So.2d 369 (La.1980), cert. den. 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed. 2d 828 (1981). A specific intent to kill can be inferred from someone pointing a gun at close range and pulling the trigger. State v. Williams, supra; State v. Procell, 365 So.2d 484 (La.1978). Georgina and Wayne Stagner testified that Tassin shot Martin and Stagner. Tassin admitted the shootings and only contested the circumstances.
The state carried its burden of proving beyond a reasonable doubt that this killing was not done in self defense. Although the state did not discuss the bloodstains found on Stagner's shirt, the other evidence overwhelmingly proved that Tassin shot both men in the back, and shot Stagner again while he was trying to escape. Instead of trying to render assistance to Martin, Tassin admitted pulling his body out of the car and leaving the scene. Tassin threw the murder weapon into the canal and drove the car into the canal to destroy evidence. After several months had passed, Tassin admitted the car's whereabouts and assisted in its recovery.
Tassin's expert, Vega, admitted that bullet holes in the roof of the car could have been made when a bullet ricocheted off a bone or other part of the car. Vega also admitted he could not be sure about the bullets' angle of exit. The photographs introduced into evidence show the roof was smashed on the driver's side of the car, which rendered any opinion regarding the angle of the bullets speculative. The state argued that Tassin was not concerned about the watch or chain necklace, because he was only interested in cash with which to buy drugs quickly. Tassin's previous employment included fishing and laying carpet, which could account for the scar Tassin displayed to the jury as evidence of his struggle with Stagner.
The state proved Tassin's guilt under the Jackson v. Virginia[20] standard. There was no error in the jury's verdict,[21] in the trial court's denial of Tassin's motion for post-verdict judgment of acquittal,[22] or the trial court's denial of Tassin's motion for new trial.[23]
Assignment of Error Number 13 raises the question of whether the aggravating circumstances found in the sentencing phase of Tassin's trial were supported by the law and evidence. The jury did not err in finding that Tassin was engaged in the perpetration of an armed robbery,[24] or that Tassin knowingly created a risk of death or great bodily harm to more than one person.[25] The third aggravating circumstance the jury found was that the offense was committed in an especially heinous, atrocious or cruel manner.[26] However, the Louisiana jurisprudence holds that there must be evidence of torture or the pitiless infliction of unnecessary pain and suffering to support this aggravating circumstance. State v. Monroe, 397 So.2d 1258 (La.1981), cert. den. 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1411 (1983). These "wounds were inflicted to kill, not to maim or to inflict pain." State v. Culberth, 390 So.2d 847 at 851 (La.1980). Moreover, the United States Supreme Court has held that, on their face, the words "especially heinous, atrocious or cruel" are unconstitutionally vague and cannot support a death penalty as a statutory aggravating circumstance because the phrase leaves a jury with unfettered discretion. Maynard v. *412 Cartwright, ___ U.S. ____, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).
Tassin argues that if one of the aggravating circumstances falls, his sentence of death must be set aside. He claims the jury may have added up the aggravating circumstances and concluded that three aggravating factors compelled a recommendation of death.
Under Louisiana's capital sentencing scheme, a sentence of death shall not be imposed unless the jury finds that at least one statutory aggravating circumstance exists beyond a reasonable doubt.[27] Subsequent invalidation of an aggravating circumstance does not invalidate a death sentence when the evidence supporting it did not inject an arbitrary factor into the proceedings, and at least one aggravating circumstances relied on by the jury is supported by the evidence. State v. Wingo, 457 So.2d 1159 (La.1984), cert. den. 471 U.S. 1030, 105 S.Ct. 2049, 85 L.Ed.2d 322 (1985); State v. Celestine, 443 So.2d 1091 (La.1983), cert. den. 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 154 (1984); State v. Sawyer, 442 So.2d 1136 (La.1983), cert. den. 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984). The evidence introduced to support the heinous aggravating circumstance constituted the res gestae of the offense. No factor was introduced that would make the penalty arbitrary or capricious. Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).
These consolidated assignments have no merit.

ASSIGNMENT OF ERROR NUMBER EIGHTEEN
Tassin argues that he was denied his right to a reliable and responsible determination of his sentence, as guaranteed by the Eighth and Fourteenth Amendments, because the jury was unaware of its ultimate responsibility for imposing a sentence of death. Tassin argues that the trial court erred by instructing the jury that its decision in the penalty phase would merely be a recommendation. He maintains that this impression was strengthened by the verdict forms which "recommended" either a life sentence or the death penalty.
Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere."[28] However, Tassin's argument is groundless, because the judge's instructions to the jury at the penalty phase were correct statements of the law.
Tassin's argument that the trial judge instructed the jury their determination would be a "recommendation" is taken out of context. At the start of the penalty phase, the trial judge specifically stated:[29]
"The jury in a capital case is given the authority to make a binding recommendation to the trial judge as to the sentence that shall be imposed upon the defendant. You now have the duty to recommend whether the defendant shall be sentenced to death or to life imprisonment without benefit of probation, parole or suspension." [Emphasis added]
After the presentation of evidence in the penalty phase, the trial judge gave the jury their final instructions:[30]
"... you must now determine whether the defendant should be sentenced to death or life imprisonment without benefit of probation, parole or suspension of sentence."
Later, the judge reiterated:[31]
"It is your responsibility in accordance with the principles of law I have instructed to determine whether the defendant should be sentenced to death or to life *413 imprisonment without benefit of probation, parole or suspension of sentence."
As early as the voir dire, the jury was informed that it might have to choose between a life sentence and the death penalty. Additionally, both defense counsel and the prosecutor informed the jury in argument during the sentencing phase that it had the ultimate responsibility of determining Tassin's sentence. The prosecutor stated "... it is now your duty to determine whether or not the sentence of life imprisonment or death is appropriate in this case."[32] The defense counsel informed the jury, "... you must decide his fate. You must decide whether it is to be life or death; life imprisonment without benefit of parole, probation or suspended sentence, or death by electrocution ..."[33] and further stated, "[t]he law is now designed to place the ultimate burden upon you to make this decision of life or death. The decision is not your neighbors', it is not the press, it is not your co-workers."[34]
The jury was properly instructed that it possessed the ultimate responsibility to impose either a life sentence or the death penalty.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER NINETEEN
Tassin argues that he was sentenced to death by a jury incorrectly instructed on the law and unaware that it could recommend life imprisonment even if it found an aggravating circumstance. Tassin argues the instruction given is analogous to an erroneous instruction in Moore v. Kemp, 809 F.2d 702 (11th Cir. 1987). In this case, the trial judge gave the following instruction:[35]
"Before you decide that a sentence of death should be imposed, you must unanimously find beyond a reasonable doubt that at least one statutory aggravating circumstance existed. If you find beyond a reasonable doubt that any of the statutory aggravating circumstances existed, you may consider imposing a sentence of death. If, however, you do not unanimous (sic) find beyond a reasonable doubt that any of the statutory aggravating circumstances existed, then life imprisonment without benefit of probation, parole or suspension of sentence will automatically be imposed. If, however, you can reach no decision on a sentence sentencing recommendation, then life imprisonment without benefit of probation, parole or suspension of sentence will automatically be imposed. Even if you find the existence of the aggravating circumstances, you must also consider any miticating circumstances before you decide that a sentence of death should be imposed."
In Moore, the judge instructed: "If you find the statutory aggravating circumstances which the Court has enumerated to you which the State contends exist, which the defendant denies, the form of your verdict would be ... death...."[36] The federal court of appeals found that the jury instruction contained mandatory language which informed the jury it was required to return a death sentence if it found a statutory aggravating circumstance. That portion of the instruction was clearly erroneous, being contradictory and confusing as to the jury's function if an aggravating circumstance were found.[37]
The instructions given in this case are almost identical to those recently reviewed in State v. Copeland, 530 So.2d 526 (La. 1988) and found permissible. Here, the trial judge's jury instructions, taken as a whole, were not contradictory or confusing, but "adequately established the constitutional and statutory guidelines for the jury." State v. Jones, 474 So.2d 919, 932 (La.1985), cert. den. 476 U.S. 1178, 106 *414 S.Ct. 2906, 90 L.Ed.2d 992 (1986); State v. Copeland, supra.
This assignment of error lacks merit.

CAPITAL SENTENCE REVIEW
LSA-C.Cr.P. art. 905.9 requires that this court review every sentence of death to determine if it is excessive. In making this determination, the court examines (1) whether the sentence was imposed under the influence of passion, prejudice or other arbitrary factors; (2) whether the evidence supports the finding of a statutory aggravating circumstance; and (3) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Louisiana Supreme Court Rule 28.

PASSION, PREJUDICE OR OTHER ARBITRARY FACTORS
There is no evidence that passion, prejudice or any arbitrary factors influenced the jury in its recommendation of the death penalty, nor has defendant offered any argument to that effect.

AGGRAVATING CIRCUMSTANCES
The jury found that Tassin killed Eddie Martin: (1) in a heinous or cruel manner; (2) while engaged in the perpetration of an armed robbery; and, (3) while creating the risk of death to more than one person. The findings that the offense was committed during an armed robbery, and involved the risk of death to more than one person are fully supported by the record. The finding that the killing was committed in a heinous, atrocious or cruel manner cannot be sustained under the state and federal jurisprudence: this aggravating circumstance is reserved for those crimes involving torture or the pitiless infliction of unnecessary pain on the victims. State v. Brogdon, 457 So. 2d 616 (La.1984), cert. den. 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Flowers, 441 So.2d 707 (La.1983), cert. den. 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); State v. Taylor, 422 So.2d 109 (La.1982), cert. den. 460 U.S. 1103, 103 S.Ct. 1803, 76 L.Ed.2d 367 (1983).
When at least one aggravating circumstance is supported by the record, the death sentence is not invalidated if an additional aggravating circumstance is not supported, as long as the evidence offered in support of the invalid circumstance did not inject an arbitrary factor into the proceedings. Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

PROPORTIONALITY
Robert Birk Tassin, Jr., is a white male who was twenty-nine years old at the time of the offense. He is the oldest of two children, had no juvenile record, and completed the eighth grade. He is married to Georgina Tassin and they have one six year old daughter, who now lives with his parents. There is no prior history of mental health treatment, but there was some indication that he had been treated at Charity Hospital's Methadone Clinic in New Orleans, Louisiana. He was self-employed as a commercial fisherman for fifteen years, and also worked as a carpet installer. In 1982, he pled guilty to attempted burglary and criminal possession of a weapon in New York and was sentenced to nine months imprisonment. In 1984, he pled guilty to possession of Diazepam in Jefferson Parish and was placed on three years inactive probation with various conditions. The Post-Sentence Investigation Report shows numerous arrests for burglary and drug offenses, in which the charges were dismissed or refused. The victim, Edward Martin, was a thirty-four year old white male who was unacquainted with Tassin until the night of the crime.
Louisiana Supreme Court Rule 28, § 4(b)(i)[38] requires that the District Attorney file a memorandum on behalf of the state which lists each case of first degree murder in the district in which sentence was imposed after January 1, 1976. This sentence review memorandum shows that there have been forty-five first degree murder prosecutions in Jefferson Parish since 1976. Thirty of the prosecutions resulted *415 in convictions for first degree murder (including this case), twelve resulted in convictions for second degree murder, and three resulted in convictions for manslaughter. Of the thirty first degree murder convictions, the jury recommended the death penalty in eleven cases (including this case).
State v. Berry, 391 So.2d 406 (La.1980), cert. den. 451 U.S. 1010, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981) affirmed the conviction and death sentence of Benjamin Berry who shot and mortally wounded a police officer working as a security guard during a bank shootout. At the time of the shooting, there were approximately twelve people in the bank. Three aggravating circumstances were found: (1) that the killing occurred during the perpetration of an armed robbery, (2) that the victim was a police officer, and (3) that Berry knowingly created a risk of death or great bodily harm to more than one person. Berry was executed on June 7, 1987.
State v. Smith, 400 So.2d 587 (La.1981) affirmed the conviction of Reginald Smith, who randomly shot at a group of boys in a lounge parking lot. The jury found that Smith knowingly created a risk of death or great bodily harm to more than one person and recommended the death penalty. After the case was remanded to the trial court for a hearing to determine if the evidence were sufficient to support the aggravating circumstance, Smith died in prison of natural causes.
State v. Lindsey[39] affirmed the conviction of Tyronne Lindsey, who shot a woman in the back in the parking lot of a shopping mall. Bystanders who gave chase to Lindsey halted when he pointed a pistol. The jury found as an aggravating circumstance that Lindsey knowingly created the risk of harm or great bodily injury to more than one person. The death sentence was initially vacated because comments of the prosecutor and instructions by the trial judge injected an arbitrary factor into the proceeding. On remand, Lindsey was again sentenced to death, and the sentence was affirmed.[40] The federal court of appeals reversed and remanded for new trial.[41] Lindsey was retried, found guilty as charged, and sentenced to death. His present appeal is pending.
State v. Sawyer[42] affirmed the conviction and sentence of Robert Sawyer, who beat, kicked, scalded, and finally set on fire the unconscious body of his victim (acting in concert with a co-defendant who also raped the victim). The jury found three aggravating circumstances: (1) that the defendant was engaged in the commission of aggravated arson; (2) that the offense was committed in an especially cruel, atrocious and heinous manner; and (3) that the defendant had previously been convicted of an unrelated murder. The jury recommended the death sentence. Sawyer's post-conviction applications are still pending in the federal courts.
State v. Robinson, 421 So.2d 229 (La. 1982) affirmed the conviction of Jimmy Robinson, who shot and killed an armed robbery victim in the presence of the victim's wife. The jury found five aggravating circumstances: (1) Robinson was engaged in the perpetration of an aggravated burglary; (2) Robinson had a significant criminal history; (3) Robinson knowingly created the risk of death or great bodily harm to more than one person; (4) the victim was an eye-witness to a crime committed by Robinson; and (5) the offense was committed in an especially cruel, heinous and atrocious manner.[43] Because the prosecutor improperly referred to appellate review, the sentence was set aside and the case remanded for a new sentencing hearing. On remand, Robinson entered a guilty *416 plea and was sentenced to life imprisonment.
State v. Taylor, 422 So.2d 109 (La.1982), cert. den. 460 U.S. 1103, 103 S.Ct. 1803, 76 L.Ed.2d 367 (1983) affirmed the conviction and death sentence of Johnny Taylor, who stabbed his victim over twenty times before locking him up to die in the truck of his own car. The jury found two aggravating circumstances: (1) Taylor was engaged in the perpetration of an armed robbery; and (2) the offense was committed in a heinous, atrocious or cruel manner. After exhaustion of his federal remedies, Taylor was executed on February 29, 1984.
State v. Flowers, 441 So.2d 707 (La. 1983), cert. den. 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984) affirmed the conviction and sentence of James Flowers, who beat, strangled and raped a seventy year old woman in her home. The jury found five aggravating circumstances and this court reviewed three of them: (1) that Flowers was engaged in the perpetration of an aggravated rape; (2) that Flowers was engaged in the perpetration of an aggravated burglary, and (3) that the offense was committed in a heinous, atrocious or cruel manner. A federal court of appeal reversed and remanded the case for a new trial.[44] Flowers was convicted of first degree murder and sentenced to life imprisonment.
State v. Nelson[45] affirmed the conviction and death sentence of Lane Nelson, who stabbed his bound victim repeatedly, then stole the victim's money and car. The jury found as an aggravating circumstance that Nelson committed the offense while engaged in the perpetration of an armed robbery. Nelson's post-conviction applications are pending.
State v. Lowenfield[46] affirmed the conviction and sentence of Leslie Lowenfield, who shot and killed his estranged girlfriend, her four year old child, the child's father, and the girlfriend's mother and stepfather. The jury convicted Lowenfield of three counts of first degree murder and found two aggravating circumstances to support the death penalty: (1) that a victim was a witness to a crime committed by Lowenfield; and (2) that Lowenfield knowingly created a risk of death or great bodily harm to more than one person. This court affirmed the sentence on the basis of the second aggravating circumstance. Lowenfield was executed April 13, 1988.
State v. Weiland, 505 So.2d 702 (La. 1987) reversed the conviction and death sentence of Glen Weiland, who stabbed and killed his girlfriend and stabbed and wounded her lover. The trial judge improperly excluded mitigating evidence. Weiland's retrial is pending.
Jefferson Parish juries have found the death penalty warranted where the offender created the risk of death or great bodily injury to more than one person and was engaged in the perpetration of an armed robbery.[47] Juries have also recommended the death penalty when the sole aggravating circumstance was that the offender created the risk of death or great bodily harm to more than one person[48] and when the sole aggravating circumstance was that the offender was engaged in an armed robbery.[49]
Here, Tassin was convicted of shooting his victim three times in the neck and back and shooting another person in the back and leg while trying to rob them. Although there was evidence that Tassin may have been under the influence of drugs that night, the jury did not find this was sufficient mitigation for his actions. Weighing the evidence in the light most *417 favorable to the prosecution, considering both aggravating and mitigating factors, a rational jury could have decided that Tassin murdered Edward Martin in a cold blooded execution style killing for profit which endangered at least one other person.[50]
Considering both the crime and the defendant, Tassin's sentence of death is not disproportionate to the penalty imposed in similar cases in Jefferson Parish.
For the reasons assigned, the conviction and sentence of defendant, Robert Tassin, are affirmed for all purposes except that this judgment shall not serve as a condition precedent to execution as provided by LSA-R.S. 15:567 until:
(a) defendant fails to petition the United States Supreme Court timely for certiorari;
(b) that court denies his petition for certiorari;
(c) having filed for and been denied certiorari, defendant fails to petition the United States Supreme Court timely under their prevailing Rules for rehearing of denial of certiorari; or
(d) that court denies his application for rehearing.
AFFIRMED.
LEMMON, J., concurs, but disagrees in two respects: (1) the trial erred in admitting the New York conviction record, although the error was harmless, and (2) the defendant has the burden of proving the affirmative defense of self defense.
NOTES
[1] LSA-R.S. 14:30 provides in pertinent part:

"A. First degree murder is the killing of a human being:
"(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, first degree robbery, or simple robbery;
* * * * * *
"(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person; or
* * * * * *
"C. Whoever commits the crime of first degree murder shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence in accordance with the recommendation of the jury."
[2] LSA-Const.1974, Art. 5, § 5(D) provides:

"Appellate Jurisdiction. In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional or (2) the defendant has been convicted of a capital offense and a penalty of death actually has been imposed."
[3] LSA-C.Cr.P. art. 798 provides:

"It is good cause for challenge on the part of the state, but not on the part of the defendant, that:
"(1) The juror is biased against the enforcement of the statute charged to have been violated, or is of the fixed opinion that the statute is invalid or unconstitutional;
"(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt; or
"(3) The juror would not convict upon circumstantial evidence."
[4] LSA-C.Cr.P. art. 797 states:

"The state or the defendant may challenge a juror for cause on the ground that:
"(1) The juror lacks a qualification required by law;
"(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
"(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
"(4) The juror will not accept the law as given to him by the court; or
"(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense."
[5] Witherspoon, supra, note 21, 391 U.S. at 522, 88 S.Ct. at 1777, 20 L.Ed.2d at 785.
[6] Witt, supra, 469 U.S. at 424, 105 S.Ct. at 852, 83 L.Ed.2d at 851.
[7] This is the type of injury produced by gunshot wounds as the bullet enters and travels through the body.
[8] LSA-R.S. 15:464 provides:

"On questions involving a knowledge obtained only by means of a special training or experience the opinions of persons having such special knowledge are admissible as expert testimony."
[9] LSA-R.S. 15:495 states:

"Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein."
[10] Also known as Valium.
[11] LSA-R.S. 15:490 provides:

"The credibility of a witness may be attacked generally, by showing that his general reputation for truth or for moral character is bad, or it may be attacked only in so far as his credibility in the case on trial is concerned."
[12] LSA-R.S. 15:492 states:

"When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same."
[13] See note 9, supra.
[14] Connor, supra, 403 So.2d at 680. The holding in Connor concerning dropped charges has a valid basis. A prosecutor may overcharge in order to correctly charge a defendant. Subsequently dropped charges may have no factual basis, which distinguishes them from the rationale of Jackson.
[15] The new Code of Evidence, Acts 1988, No. 515, effective January 1, 1989, would restrict such evidence unless the witness denied the conviction, testified to exculpatory facts, or when probative value would outweigh prejudice or jury confusion. Art. 609.1(C).
[16] Jackson v. Virginia, 443 U.S. 307 at 319, 99 S.Ct. 2781 at 2789, 61 L.Ed.2d 560 at 573 (1979).
[17] The same aggravating circumstances may be an element of the underlying offense of first degree murder and an aggravating circumstance at the penalty phase of trial. Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988).
[18] Although she did not see her husband obtain the gun, she did notice a bulge in his pants around his waist area.
[19] Georgina Tassin was later sentenced to 10 years imprisonment on the armed robbery charge.
[20] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[21] Assignment of Error No. 11.
[22] Assignment of Error No. 15.
[23] Assignment of Error No. 16.
[24] LSA-C.Cr.P. art. 905.4(A)(1).
[25] LSA-C.Cr.P. art. 905.4(A)(4).
[26] LSA-C.Cr.P. art. 905.4(A)(7).
[27] LSA-C.Cr.P. art. 905.3.
[28] 472 U.S. at 328, 105 S.Ct. at 2639, 86 L.Ed.2d at 239.
[29] Tr., Vol. 11, pp. 1965-1966.
[30] Tr., Vol. 11, p. 2012.
[31] Tr., Vol. 11, p. 2017.
[32] Tr., Vol. 11, p. 1966.
[33] Tr., Vol. 11, p. 1969.
[34] Tr., Vol. 11, p. 2009.
[35] Tr., Vol. 11, p. 2014.
[36] Moore, supra, 809 F.2d at 732.
[37] Moore, supra, 809 F.2d at 733.
[38] Rule 905.9.1 (applicable to LSA-C.Cr.P. art. 905.9).
[39] 404 So.2d 466 (La.1981), appeal after remand, 428 So.2d 420 (La.1983), cert. den. 464 U.S. 908, 104 S.Ct. 261, 78 L.Ed.2d 246 (1983).
[40] 428 So.2d 420 (La.1983).
[41] 769 F.2d 1034 (5th Cir.1985).
[42] 422 So.2d 95 (La.1982), cert. granted 463 U.S. 1223, 103 S.Ct. 3567, 77 L.Ed.2d 1407 (1983); on remand, 442 So.2d 1136 (La.1983), cert. den. 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984).
[43] Aggravating circumstances Nos. 3, 4, and 5 from the District Attorney's Memorandum, p. 15.
[44] 779 F.2d 1115 (5th Cir.1986), cert. den. 475 U.S. 1132, 106 S.Ct. 1661, 90 L.Ed.2d 204 (1986).
[45] 459 So.2d 510 (La.1984), cert. den. 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 322 (1985).
[46] 495 So.2d 1245 (La.1985), cert. den. 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986), reh. den. 478 U.S. 1032, 107 S.Ct. 13, 92 L.Ed.2d 768 (1986); on post conviction proceeding, Lowenfield v. Phelps, 484 U.S. ____, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), reh. den. ___ U.S. ____, 108 S.Ct. 1126, 99 L.Ed.2d 286 (1988).
[47] State v. Berry, supra; State v. Robinson, supra.
[48] State v. Smith, supra; State v. Lindsey, supra; State v. Weiland, supra.
[49] State v. Nelson, supra.
[50] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).